**Friedericke Tuebbecke, Appellee, v. A. M. Rothschild & Company, Appellant.**

### Gen. No. 14,760.

MALICIOUS PROSECUTION—*what acquittal of criminal charge does not tend to establish.* The termination of a criminal prosecution, on account of which the action is brought, in favor of the plaintiff, does not tend to prove either the element of malice or that of want of probable cause.

Action for malicious prosecution. Appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908.

Reversed with finding of facts and judgment here. Opinion filed January 18, 1910.

BENSON LANDON, for appellant; WILLIAM S. FORREST, of counsel.

JOHN C. KING, J. E. INGRAM, JAMES D. POWER and EMIL A. MEYER, for appellee.

MR. JUSTICE MACK delivered the opinion of the court.

This was an action for malicious prosecution brought by appellee against appellant for having, as she alleged, falsely and maliciously charged her with the larceny of certain goods from its store.

A similar action was brought by the same complainant against Siegel, Cooper & Company, for a similar prosecution at about the same time on charges of larceny alleged to have been committed just after the alleged larceny from appellant.

In that case a judgment for $500 in favor of the appellee herein was reversed and a judgment entered in this court in favor of Siegel, Cooper & Co. Siegel, Cooper & Co. v. Tuebbecke, 133 Ill. App. 312.

All of the facts as recited in the opinion in that case were again testified to in the present case. One jury disagreed and the second jury brought in a verdict for $5,000 against the appellant. The trial judge in overruling the motion for a new trial at first required her to remit down to $2,000. Thereupon, the plaintiff and her counsel, having retired for consultation, returned and the following proceedings were had:

"Mr. King: In this case my client would like to have the court make it $2,500, for the reason that her expenses have been very great.

The Court: I am willing to please the lady in that particular. I will make it $2,500.

Mr. Landon: Just to please the lady?

The Court: Yes."

The judgment was rendered for $2,500.

In overruling appellant's motion to direct a verdict the court stated:

"I see the full force of the opinion of the higher

court in a similar case, and I hope that all the parties connected with this trial, including the parties themselves, see the force of it.   That seems to preface the ultimate end of this trial, and of course any person who does not see it that way is hardly honest with themselves and with those who they are associated with.   *   *   *   The opinion of the Siegel-Cooper case is not *res adjudicata* in this case, but it is nearly as bad.   It is true two judges have allowed the case to go to the jury, but they did not have the opinion of the Appellate Court to face as I have.''

In overruling the motion for a new trial the trial judge said:

''I believe that the final fate of this case is foretold by the opinion of the higher court in the Siegel-Cooper case.   The law is uniform, and it is inconceivable to me that the higher court will apply one law to Siegel and Cooper and a different law to an adjoining merchant upon the same street in the same city.   The circumstances of the two cases are almost identical and the witnesses are almost identical.

''No one connected with the trial in this court will likely be satisfied with my course.   Indeed, I am not satisfied with it myself.   I have endeavored to adjust this controversy between these parties, without success.   I did so because I was confident, and I am still confident, that by a settlement the plaintiff will enjoy more gratification and have more money than she will in any other way.

''As I have stated, I am myself dissatisfied with the course that I have taken and intend to take, and you will all be dissatisfied.   *   *   *   There always is a bare possibility that the most conservative judgment may be wrong, but I am unwilling to deprive the plaintiff of that bare possibility of ultimate success in this trial.   From my standpoint that is all there is in the future for her.   *   *   *

''I am going to deny the motion for a new trial.   If the Appellate Court refuses to allow a verdict of a few hundred dollars to stand against Siegel and Cooper, upon substantially the same evidence, furnished by substantially the same witnesses, and recently, it is supreme folly for any of us to expect that

the same court will allow a verdict and judgment of $5,000 to stand against an adjoining merchant upon the same street whose business is located only a few blocks from the other.

"I have determined reluctantly to accord the plaintiff and her counsel the bare possibility if they desire by allowing this case to go to the higher court in the sum of $2,000."

We concur entirely in the criticism of counsel for appellant that the trial judge clearly indicated that in his judgment the plaintiff had failed to establish want of probable cause for the prosecution, and it is to us as it is to him, inconceivable why the trial judge under these circumstances should have refrained from directing a verdict or, after verdict, should have hesitated to grant a new trial.

The parties do not differ materially as to the principles of law applicable to the case. The burden is on the plaintiff to establish affirmatively malice, lack of probable cause and that defendant acted through its agent or servant.

Defendant's acquittal in the criminal case is no evidence whatsoever either of malice or of any lack of probable cause; therefore the court erred in refusing to charge the jury, as requested by the defendant, that the fact that the criminal prosecution terminated in plaintiff's favor, does not tend to prove either the element of malice or the element of want of probable cause. Under all of the circumstances of this case, even if there had been evidence from which the jury would have had the right to infer want of probable cause, the refusal to give this instruction would have been such error as to have required a reversal and remanding.

Before remanding, however, it is necessary to ascertain whether there is any evidence in the record from which the jury could have reached its conclusion.

According to the testimony the complainant in the criminal proceedings was one Olson, a special police officer for a detective agency which was under contract,

both with Rothschild & Company and with Siegel, Cooper & Company, for the protection of their places of business. He claimed to have seen the plaintiff take one boy's waist and other property from Rothschild & Co. on January 17. He did not, however, arrest her because, as he says, the goods were worth less than $1, but followed her and her sister across the street into Siegel, Cooper & Company's store, where he claims to have observed them taking other property. Thereupon they were arrested and were proceeded against on a complaint charging them with larceny from Siegel, Cooper & Company. Six days later, at the time of the hearing before a justice of the peace on the charge of larceny from Siegel, Cooper & Company, Olson, at the direction of the head of the detective agency by which he was employed and on the advice of an assistant state's attorney, who was in charge of the prosecution, made the complaint of larceny from Rothschild & Company which forms the basis of the proceedings in this case. He subsequently appeared before the grand jury. Only in this way is the defendant connected with the prosecution.

Olson was called as a witness on behalf of the plaintiff, and testified that he was detailed at Rothschild's in 1902, at different times, but he did not remember whether or not he was detailed there on January 23; that he was in the employ of a detective agency at that time. He further testified that he received his orders from the detective agency and did not take orders from Rothschild & Company or any one in the store of Rothschild & Company, and that he made his reports to the agency.

Defendant's secretary, called as a witness by plaintiff, testified that in January, 1902, the McGuire & White Detective Agency was employed by defendant to perform police protection, looking after shoplifters, that Olson was not working directly for defendant but in its store for the McGuire & White Agency.

McGuire testified that the agency had a contract with defendant to protect its store from and to keep such

men there as was necessary for that purpose, charging defendant $5 a day for the services of each man.

It is clear from this testimony that Olson was not an employe or under the orders of defendant. There is no proof that on the day he made complaint he was working at defendant's store. It is proved that he made the complaint solely because of the instructions of the assistant state's attorney and under McGuire's orders. Whatever might have been defendant's responsibility for his acts committed while working in the store, we are unable to see on what theory it can be held liable for a prosecution begun and carried on, so far as the evidence shows, without its knowledge by an employe of an independent contractor.

Moreover in our opinion the entire evidence utterly fails to show a lack of probable cause or any malice in the prosecution.

The judgment will be reversed with a finding of facts and judgment thereon for defendant.

*Reversed with finding of facts and judgment here.*